**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BASTIN TRUCK PARTS AND SERVICE d/b/a BASTIN TOWING; JOSEPH BASTIN; and PATRICIA BASTIN,<br><br>Plaintiffs,<br><br>v.<br><br>EAST DEER TOWNSHIP, PENNSYLVANIA; ANTHONY TALIANI, JR., *Chairman of the East Deer Township Board of Commissioners*; ALLEGHENY VALLEY REGIONAL POLICE DEPARTMENT; MICHAEL NAVIGLIA, *Chief of Police*; CRAIG CUMMINGS, *Sergeant*; CHRISTINE VACCA, *Officer*; DALTON VANWHY, *Officer*; and JOSHUA WILLFORD, *Officer*,<br><br>Defendants. | ) | Civil Action No. 24-1538 |

**<u>MEMORANDUM OPINION</u>**

## I. <u>INTRODUCTION</u>

Plaintiffs Bastin Truck Parts and Service d/b/a Bastin Towing ("Bastin Towing"), Joseph Bastin, and Patricia Bastin (collectively, "Plaintiffs") bring this action alleging a claim of retaliation in violation of the First Amendment to the Constitution of the United States, pursuant to 42 U.S.C. § 1983, and a claim of breach of contract under Pennsylvania law. (Docket No. 26). Plaintiffs name a number of Defendants, including: East Deer Township, Pennsylvania ("East Deer" or the "Township") and Anthony Taliani, Jr., Chairman of the East Deer Township Board of Commissioners ("Mr. Taliani") (collectively, the "East Deer Defendants"); and the Allegheny Valley Regional Police Department (the "AVR PD"), Michael Naviglia, AVR PD Chief ("Captain

Naviglia”), and AVR PD police officers Craig Cummings (“Sergeant Cummings”), Christine Vacca (“Officer Vacca”), Dalton Vanwhy (“Officer Vanwhy”), and Joshua Willford (“Officer Willford”) (collectively, the Officers and the AVR PD are referred to herein as the “Police Defendants”).

Presently before the Court are two motions to dismiss Plaintiffs’ Fourth Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted, filed by the East Deer Defendants (Docket Nos. 27, 28), and the Police Defendants (Docket Nos. 29, 30). For the reasons set forth, Defendants’ motions will be granted in part and denied in part.

## II. PROCEDURAL HISTORY

This case, although it has not progressed beyond Rule 12 motions, has a tortured procedural history, which the Court will summarize briefly here. The action commenced on December 4, 2023, when Plaintiffs filed a Praecipe for Writ of Summons in the Court of Common Pleas of Allegheny County at Docket No. GC-23-13810. (Docket No. 1 at 1). The Complaint was filed in that case on May 17, 2024. (*Id.*; Docket No. 1-1). Plaintiffs filed their First Amended Complaint on July 17, 2024, and their Second Amended Complaint on October 20, 2024. (Docket Nos. 1 at 2; 1-2; 1-3). The case was timely removed to this Court on November 8, 2024, pursuant to the procedures authorized by 28 U.S.C. §1441(a), by the East Deer Defendants with the consent of the Police Defendants, based on this Court having original jurisdiction over Plaintiffs’ § 1983 claim pursuant to 28 U.S.C. §1331 and §1343, and supplemental jurisdiction over Plaintiffs’ state claim pursuant to 28 U.S.C. § 1367. (Docket No. 1 at 2-3).

On December 18, 2024, the East Deer Defendants filed a Motion for a More Definite Statement pursuant to Rule 12(e) of the Federal Rules of Civil Procedure (Docket No. 6), and on

December 20, 2024, the Police Defendants filed a similar motion (Docket No. 9). The Court issued briefing schedules, ordering Plaintiffs to respond to Defendants' motions by January 8, 2025, and Defendants to file replies if they so chose by January 15, 2025, and specifically instructing the parties to address whether the Court has subject matter jurisdiction over the claims here. (Docket Nos. 8, 10). Instead of responding to Defendants' motions in accordance with the Court's orders, on January 7, 2025, Plaintiffs filed a Third Amended Complaint. (Docket No. 11). The Court issued an order denying Defendants' Rule 12(e) motions as moot (Docket No. 12) and, on January 21, 2025, the East Deer Defendants and the Police Defendants both filed Motions to Dismiss Plaintiffs' Third Amended Complaint and briefs in support. (Docket Nos. 13, 14, 15, 16).

Under this judicial officer's practices and procedures, Plaintiffs' responses to Defendants' Motions to Dismiss the Third Amended Complaint were due by February 11, 2026. Plaintiffs did not file any responses by that date or thereafter, nor did they ask the Court for an extension of time in which to respond. Therefore, on May 30, 2025 – after five months had elapsed – the Court issued an Order for Plaintiffs to Show Cause, by June 6, 2025, why Defendants' motions should not be granted and Plaintiffs' claims in this matter should not be dismissed with prejudice. (Docket No. 19). On June 5, 2025, in defiance of the Court's Order to Show Cause, Plaintiffs instead filed a fourth Amended Complaint.

On June 16, 2025, the Court issued another Order indicating that, Plaintiffs having not obtained Defendants' written consent or the Court's leave prior to filing yet another amended complaint, the pleading was stricken from the Record, and Plaintiffs were once again ordered to Show Cause (this time by June 23, 2025) why Defendants' Motions to Dismiss should not be granted and Plaintiffs' claims should not be dismissed with prejudice. (Docket No. 21). The Court further advised Plaintiffs that failure to comply with its Order could result in Defendants' Motions

to Dismiss the Third Amended Complaint being granted and/or Plaintiffs' claims being dismissed for failure to prosecute pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. (*See id.*). On June 23, 2025, Plaintiffs filed a response that did not explain their failure to obey the Court's prior Order, but did address Defendants' Motions to Dismiss. (Docket No. 22). Therefore, on September 5, 2025, the Court issued a Memorandum Opinion and Order granting Defendants' Motions to Dismiss the Third Amended Complaint pursuant to Rule 12(b)(6); dismissing Plaintiffs' § 1983 claim without prejudice; ordering Plaintiffs to file a Fourth Amended Complaint (if they wished to amend the pleading deficiencies identified by the Court) by September 26, 2025; and advising that if Plaintiffs did not file a Fourth Amended Complaint by that date, their § 1983 claim would be dismissed with prejudice and the Court would decline to exercise supplemental jurisdiction over Plaintiffs' state law claim. (Docket Nos. 23, 24).

On September 26, 2025, Plaintiffs again filed a Fourth Amended Complaint (Docket No. 26), the operative complaint here, which is Plaintiffs' fifth iteration of the complaint (or sixth iteration of the complaint if the stricken amended complaint is included). Once again, on October 17, 2025, the East Deer Defendants and the Police Defendants both filed Motions to Dismiss the Fourth Amended Complaint pursuant to Rule 12(b)(6), along with supporting briefs. Under this judicial officer's practices and procedures, Plaintiff's responses to Defendants' Motions to Dismiss were due by November 7, 2026. Once again, Plaintiffs filed no responses by that date, nor did they ask the Court for an extension of time in which to respond. Therefore, once again – after a lapse of approximately seven months – on June 3, 2026, the Court issued yet another Order to Show Cause. (Docket No. 35). As this was the third time in this case that Plaintiffs were ordered to show cause why their claims should not be dismissed for failure to respond to motions to dismiss, the Court simply ordered Plaintiffs to show cause, by June 17, 2026, why this action

should not be dismissed with prejudice pursuant to Rule 41(b) for failure to prosecute.

On June 17, 2026, Plaintiffs filed a document entitled, "Response to Order to Show Cause and Request to Remand to State Court and Brief in Support." (Docket No. 36). In that response, Plaintiffs once again do not explain why they failed to respond to Defendants' Motions to Dismiss for over seven months. Instead, Plaintiffs again argue that they have stated claims upon which relief can be granted so Defendants' motions should be denied and, in the alternative, Plaintiffs also request that the Court deny Defendants' motions and remand the case to the Court of Common Pleas of Allegheny County. (*Id.*).

## III. FACTUAL BACKGROUND

Turning to the factual averments in the Fourth Amended Complaint (the "FAC") (Docket No. 26), the Court will present an abbreviated version of the facts alleged, in the light most favorable to Plaintiffs, that are relevant to Defendants' Motions to Dismiss. As alleged in the FAC, Plaintiffs, who are husband and wife, are the owners and operators of Plaintiff Bastin Towing, which provides and/or provided general, accident, and emergency vehicle towing services to private individuals and several local municipalities, including East Deer. (Docket No. 26, ¶¶ 1, 2). East Deer is a Pennsylvania Township that is managed by its elected Board of Commissioners, of which Defendant Mr. Taliani is a Member and President. (*Id.* ¶¶ 7, 8). Mr. Taliani is and/or was also an AVR PD Board Member. (*Id.* ¶ 8). On February 3, 2022, East Deer adopted an ordinance authorizing the Township to join Defendant AVR PD as a "participating member." (*Id.* ¶ 10). Effective January 13, 2022, Defendant Chief Naviglia was appointed Interim Chief for the Township of East Deer Police Department during its transition period to the AVR PD, and he is the current Chief of the AVR PD. (*Id.* ¶ 9). Defendants Sergeant Cummings, Officer Vacca, Officer Vanwhy, and Officer Willford are or were officers of the AVR PD at all relevant times.

(*Id.* ¶¶ 18-22). According to Plaintiffs, at all relevant times Mr. Taliani, as a Member and President of the Township's Board of Commissioners, was under the Township's care, custody, and control; and, as a member of the AVR PD Commission, Mr. Taliani was under its care, custody, and control. (*Id.* ¶ 14).

As Plaintiffs allege in the FAC, Bastin Towing provided its vehicle towing services to East Deer "based on the publicly recognized and acknowledged long-standing contract and business agreement for 15 years, more or less," under which East Deer utilized Bastin Towing (along with another vehicle towing service) on a monthly-alternating call out schedule. (Docket No. 26, ¶ 2). According to Plaintiffs, "Municipal and/or Township Towing Call Out Services pursuant to the approved agreement" are provided to individual vehicle owners and operators on an as-needed basis, with vehicle owners and operators reserving the right to call their own towing service as long as the towing service can deliver services within a reasonable time period. (*Id.* ¶ 23). Additionally, Plaintiffs allege, "Subject to the Township's Agreement," individual police officers have "'official discretion to make decisions on who to call for towing [services] as they deem fit.'" (*Id.* ¶ 24).

On July 15, 2019, Plaintiffs filed a lawsuit against Chief Naviglia and another Pennsylvania municipality, the Borough of Cheswick, in the Court of Common Pleas of Allegheny County, Pennsylvania, at Case No. GD-19-009771 (the "Cheswick lawsuit"), based on the allegedly improper termination of a "Towing Agreement" between the Borough of Cheswick and Bastin Towing. (Docket No. 26, ¶¶ 25, 26). Plaintiffs allege that, for the period beginning January 13, 2022, through December 14, 2023, Mr. Taliani and Chief Naviglia (without East Deer Township Board authority) acted "in retaliation against Plaintiffs," and refused to allow – or, as to Chief Naviglia, directed, ordered, and/or commanded Sergeant Cummings, Officer Vacca, Officer

Vanwhy, and Officer Willford to stop – calling out Bastin Towing for all towing services in East Deer, "in violation and breach of the long-standing pre-existing agreement, and business relationship and existing long term past practice to provide monthly alternate towing calls between Terry Lilly Towing Service and Bastin Towing Service for all towing service calls in the Township of East Deer." (*Id.* ¶¶ 37-39). Plaintiffs allege that the officers stopped calling Bastin Towing for all towing services. (*Id.* ¶¶ 40-44).

Plaintiffs further allege that, on December 14, 2023, Mr. Taliani, "in retaliation," stated at a public East Deer Board of Commissioners meeting, "'There is a situation that has come up that legal counsel of the [AVR PD] has recommended that our officers have no interaction with Mr. Bastin. ***Not because of his [Bastin] service is doing nothing wrong but a legal suit he [Bastin] has filed with Cheswick Boro and the Chief of Police***.'" (Docket No. 26, ¶ 45 (quoting Ex. A to the FAC, entitled "Meeting Minutes 12-14-23" (emphasis added in the FAC)). That same day, on a motion by two other Board Members, the East Deer Board of Commissioners unanimously voted to "'approve the use of Terry's Towing for ***all accidents*** in East Deer Township.'" (*Id.* ¶ 46 (quoting Ex. A to the FAC (emphasis added in the FAC)). Plaintiffs allege that East Deer thus "took official action at a public meeting and with unanimous approval of the Township of East Deer Board of Commissioners, the Township of East Deer acted with malice and willful misconduct, and in retaliation against Plaintiffs . . . by terminating ***All Towing Services*** . . . between the Township of East Dee[r] and Plaintiffs . . . without valid reason, lawful basis, valid grounds, or just cause and/or timely and proper notice." (*Id.* ¶ 47). Plaintiffs also allege that after such vote Chief Naviglia, as directed by Mr. Taliani, acted "in retaliation" against Plaintiffs by improperly terminating all towing services "between the Township of East Dee[r]" and by improperly notifying the Allegheny County Department of Emergency Services to stop call outs to Bastin

Towing for East Deer. (*Id.* ¶¶ 48, 49).

Plaintiffs' FAC contains two Counts against Defendants: Breach of Contract (Count I),[1] and Retaliation (Count II). (Docket No. 26). Plaintiffs' retaliation claim is based on their contention that Defendants willfully violated Plaintiffs' First Amendment rights under the United States Constitution, pursuant to 42 U.S.C. § 1983, based solely on the fact that Plaintiffs filed a lawsuit against a neighboring community and Chief Naviglia. (*Id.* ¶¶ 53, 55). Plaintiffs' claim for breach of contract is brought pursuant to Pennsylvania law. (*Id.* at 8). As noted above, Defendants have filed Motions to Dismiss the Fourth Amended Complaint in its entirety pursuant to Rule 12(b)(6). In response, Plaintiffs argue that the motions should not be granted because Plaintiffs have stated claims upon which relief can be granted. Alternatively, Plaintiffs ask that the Court deny Defendants' Motions to Dismiss and remand the case to the Court of Common Pleas of Allegheny County.

As Defendants' motions are briefed, they are now ripe for decision.

## IV. STANDARD OF REVIEW

### A. Rule 12(b)(6)

In considering a Rule 12(b)(6) motion to dismiss, the factual allegations contained in the complaint must be accepted as true and must be construed in the light most favorable to the plaintiff, and the court must "'determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007). While Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled

[1] In the Third Amended Complaint, Count I previously alleged a claim of Tortious Interference with Contractual Relations. (Docket No. 11 at 6).

to relief," the complaint must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Phillips*, 515 F.3d at 231 (quoting *Twombly*, 550 U.S. at 555 (internal citation and quotation marks omitted)). Moreover, while "this standard does not require 'detailed factual allegations,'" Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

It should be further noted, therefore, that in order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The Supreme Court has noted that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The standard "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556). Moreover, the requirement that a court accept as true all factual allegations does not extend to legal conclusions; thus, a court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555 (internal citation and quotation marks omitted)).

To review a complaint under this standard, the Court proceeds in three steps. *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, the Court notes the elements of a claim. *See id.* (citing *Iqbal*, 556 U.S. at 675). Second, the Court eliminates conclusory allegations. *See id.* (citing *Iqbal*, 556 U.S. at 679). And finally, the Court assumes the remaining well-pleaded facts are true and assesses "whether they plausibly give rise to an entitlement to relief." *Id.*

(quoting *Iqbal*, 556 U.S. at 679). This "plausibility" determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## V. DISCUSSION

### A. Plaintiffs' First Amendment Retaliation Claim Brought Pursuant to 42 U.S.C. § 1983 (Count II)

Plaintiffs bring their First Amendment retaliation claim pursuant to 42 U.S.C. § 1983, which does not create any substantive rights but, rather, provides a remedy for deprivations of rights created by the Constitution of the United States or federal law. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). Thus, "[t]o state a claim for relief in an action brought under § 1983, [plaintiffs] must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). As previously noted, Plaintiffs assert at Count II of their FAC that Defendants retaliated against them in violation of their rights under the First Amendment to the Constitution of the United States.

The Court notes initially that the FAC, despite now being in its fifth (or sixth) iteration, is still somewhat unclear. Therefore, once again, it is difficult for Defendants to respond fully to Plaintiffs' allegations, and for the Court to evaluate the plausibility of Plaintiffs' claims. As in the Third Amended Complaint, while Plaintiffs allege two separate Counts in the FAC, some allegations seem to overlap and/or appear out of place in Plaintiffs' narrative, such that it is not entirely evident upon which allegations each of Plaintiffs' claims is based. Additionally, in making their allegations, Plaintiffs still do not fully differentiate among the Defendants, so both Counts appear to be lodged against all Defendants, and some allegations refer to actions ostensibly taken by all Defendants, although Plaintiffs may or may not have so intended in drafting their complaint.

*See* Fed. R. Civ. P. 8(a)(2). In dismissing the Third Amended Complaint, the Court previously pointed out this deficiency, but Plaintiffs have not heeded this admonition and the FAC's allegations still at times fail to differentiate clearly among the Defendants.

Nevertheless, as noted above, the Court is able to discern that, at Count II, the FAC alleges that Defendants all violated Plaintiffs' First Amendment rights by stopping East Deer vehicle towing call outs to Bastin Towing – thereby terminating a contract between Plaintiffs and East Deer – solely in retaliation for Plaintiffs having filed a lawsuit against a neighboring community and Chief Naviglia (the "Cheswick lawsuit"). As in the Third Amended Complaint, Plaintiffs again assert broadly in the FAC that it is unlawful to retaliate against a contractor or service provider for filing a legal action against a neighboring community and another party. (Docket No. 26, ¶ 55).

As the Court previously explained in granting Defendants' motions to dismiss the Third Amended Complaint, the opinion of the Court of Appeals for the Third Circuit in *D & D Assocs., Inc. v. Board of Educ. of N. Plainfield* is instructive here. *See* 552 F. App'x 110 (3d Cir. 2014). In that case, the Court of Appeals considered the claims of a contractor who had entered into various contracts with a school board for school renovations, and who then later filed a number of civil rights, contract, and tort claims against the school board and its attorney, a construction management company, and an architect. *See id.* The Court of Appeals explained in *D&D* that "[t]o prevail on a First Amendment retaliation claim under § 1983, 'a plaintiff must prove (1) that he engaged in constitutionally-protected activity; (2) that the government responded with retaliation; and (3) that the protected activity caused the retaliation.'" *Id.* at 114 (quoting *Miller v. Mitchell*, 598 F.3d 139, 147 (3d Cir. 2010) (additional internal quotation marks and citation omitted)). The Court of Appeals further advised that "[w]here the speaker is a government

employee, that person 'must show that he or she spoke *as a citizen* on a matter of public concern.'" *Id.* (quoting *Borough of Duryea, Pa., v. Guarnieri*, 564 U.S. 379, 386 (2011) (emphasis added in *D&D*)). The Court of Appeals also noted that such test, "'adjusted to weigh the government's interests as [a] contractor rather than as [an] employer,' applies to government contractors," like the plaintiff in that case. *Id.* (quoting *Board of Cnty. Comm'rs v. Umbehr,* 518 U.S. 668, 673 (1996)).

Upon consideration of the FAC here, as the Court previously found in analyzing the Third Amended Complaint, the Court again finds that Plaintiffs' allegations in support of their First Amendment retaliation claim are deficient. First, Plaintiffs do not allege that the Cheswick lawsuit (the underlying constitutionally-protected activity) was filed in Plaintiffs' capacity as citizens, rather than as contractors of Cheswick Borough. Rather, Plaintiffs allege that the Cheswick lawsuit involves the allegedly improper termination of a "Towing Agreement between the Borough of Cheswick and Bastin Towing." (Docket No. 26, ¶ 26). Accordingly, a plain reading of the FAC indicates that Plaintiffs brought the Cheswick lawsuit in their capacity as contractors of Cheswick Borough.

Furthermore:

> [T]he Supreme Court has expressly held that a public contractor is akin to a government employee under the First Amendment and that a retaliation claim based on his or her criticism of the contracting government agency is protected activity if it can pass the "*Pickering* balancing test, adjusted to weigh the government's interests as contractor rather than as employer ...." *Bd. of Cnty. Comm'rs v. Umbehr*, 518 U.S. 668, 673, 116 S. Ct. 2342, 135 L. Ed. 2d 843 (1996). In other words, independent contractors with the government—as Plaintiffs are here—are protected by the First Amendment and are treated similarly to public employees for purposes of First Amendment retaliation claims. *Id.* "**Thus, to pass the first hurdle, [a public contractor plaintiff] must allege its speech involved a matter of public concern**." *Glover* [*v. Mabrey*, 384 F. App'x 763, 769 (10th Cir. 2010)]; *see also Ervin and Assocs., Inc. v. Dunlap*, 33 F. Supp. 2d 1 (D.D.C. 1997).

*Luongo v. Pennsylvania State Police*, 156 F. Supp. 3d 599, 610 (E.D. Pa. 2016) (emphasis added).

Since Plaintiffs appear to have brought the Cheswick lawsuit in their capacity as contractors of Cheswick Borough, the Court must determine whether the Cheswick lawsuit constitutes speech that is a matter of public concern. More specifically:

> "Speech implicates a matter of public concern if the content, form, and context establish that the speech involves a matter of political, social, or other concern to the community." *Miller v. Clinton Cnty.*, 544 F.3d 542, 548 (2008). "The content of the speech may involve a matter of public concern if it attempts 'to bring to light actual or potential wrongdoing or breach of public trust on the part of government officials.'" *Baldassare v. State of N.J.*, 250 F.3d 188, 195 (3d Cir. 2001) (quotations omitted). Notably, complaints—which do not seek to expose discriminatory or harassing practices or policies, but complain solely about the speaker's own abuse and mistreatment by superiors and/or co-workers—are not a matter of public concern. *Bell v. City of Phila.*, 275 Fed. Appx. 157, 159 (3d Cir. 2008).

*Id.* at 611.

Here, the FAC alleges that the Cheswick lawsuit "is very similar to the case at bar in that the Borough of Cheswick and/or Chief Naviglia improperly terminated the Towing Agreement between the Borough of Cheswick and Bastin Towing." (Docket No. 26, ¶ 26). Once again, a plain reading of the FAC indicates that the Cheswick lawsuit was brought by a business against a borough regarding a contract dispute with that borough. Notably, Plaintiffs themselves do not allege that the Cheswick lawsuit addressed a matter of public concern, nor do they allege facts regarding the Cheswick Lawsuit from which the Court could infer that such action implicates a matter of public concern. Rather, on the face of the FAC, and absent any allegations indicating otherwise, the Cheswick lawsuit clearly appears to involve a contractor's suit regarding its own business interests and not interests of public concern.

Additionally, in dismissing the Third Amended Complaint, the Court previously indicated that Plaintiffs had merely claimed that they were retaliated against for having filed a lawsuit against

a different municipality and Chief Naviglia, without providing any details about the lawsuit in question, in order to show that terminating the contract with East Deer violated Plaintiffs' First Amendment rights. (Docket No. 23 at 10). The Court advised Plaintiffs at that time that, absent factual averments regarding the nature of that lawsuit, the Court cannot determine whether such speech involved a matter of public concern, or whether it was made in an employee (or, here, a contractor) capacity, in which case it may not be protected by the First Amendment.[2] (*Id.*). In the FAC, Plaintiffs newly allege that the Cheswick lawsuit is very similar to the present case in that Cheswick Borough and Chief Naviglia improperly terminated a towing agreement between the Borough of Cheswick and Bastin Towing. (Docket No. 26, ¶¶ 25, 26). As explained above, however, the FAC still does not allege that the Cheswick lawsuit was brought by Plaintiffs in their capacity as citizens or that it addressed a matter of public concern. *See, e.g.*, *Watters v. City of Philadelphia*, 55 F.3d 886, 892 (3d Cir. 1995) (stating that speech, in that case by a government employee, "addresses a matter of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community" (internal quotation marks and citations omitted)); *D&D Assocs., Inc. v. Board of Educ. of N. Plainfield*, Civ. Action No. 03-1026(MLC), 2007 WL 4554208, at *13 (D.N.J. Dec. 21, 2007) (finding that D & D's statements and conduct did not relate to any matter of political, social, or other concern to the community, but instead relate to matters of personal interest to D & D and address individual circumstances of its termination from a project); *Sobel v. Marcocci*, Civ. A. No. 87-1965, 1988 WL 94281 (E.D. Pa. 1988) (finding that, although plaintiff had appended to his complaint a copy of a previously filed defamation complaint against one of the defendants in that case, neither plaintiff's allegations

---

[2] Plaintiffs argue that since Chief Naviglia is also a named defendant in the Cheswick lawsuit, he certainly has or had firsthand knowledge of such lawsuit, but such knowledge is not relevant to adequately alleging Plaintiffs' First Amendment retaliation claim here. (Docket No. 36 at 7).

against that defendant in the previously filed complaint, nor the filing of the previous complaint constituted speech on a matter of public concern). Moreover, in responding to Defendants' Motions to Dismiss, Plaintiffs do not argue that they have alleged constitutionally protected speech; in fact, Plaintiffs do not address the issue of whether they have alleged constitutionally protected conduct at all in their response. Therefore, Plaintiffs' retaliation claim fails on the first prong of the First Amendment retaliation analysis.

Because the FAC does not allege facts showing underlying constitutionally protected speech to establish the first prong of the retaliation analysis, it is unnecessary for the Court to reach the other steps of such analysis. *See D & D*, 552 F. App'x at 115. Accordingly, the Court finds that Plaintiffs have failed to state a plausible claim against Defendants for First Amendment retaliation, and such claim will be dismissed pursuant to Rule 12(b)(6). As the FAC constitutes Plaintiffs' fifth (or sixth) attempt to state a plausible First Amendment retaliation in this action, the Court finds that further amendment of Count II would be futile, so such dismissal will be with prejudice. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

**B. <u>Plaintiffs' Breach of Contract Claim Under Pennsylvania Law (Count I)</u>**

At Count I of their FAC, Plaintiffs also allege a claim of breach of contract against all Defendants. (Docket No. 26 at 8). Even if the FAC contains sufficient allegations to state a claim for that tort under Pennsylvania law (regarding which the Court expresses no opinion), the Court could only consider this claim under its supplemental jurisdiction pursuant to 28 U.S.C. § 1367. However, 28 U.S.C. § 1367(c) provides that district courts "may decline to exercise supplemental jurisdiction over a claim . . . if . . . (3) the district court has dismissed all claims over which it has original jurisdiction." Furthermore, "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state

claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995).

Here, the Court finds that there is nothing unique about this case such that considerations of judicial economy, convenience, and fairness provide an affirmative justification for exercising supplemental jurisdiction over Plaintiffs' state law claim if Plaintiffs' federal question claim at Count II is dismissed with prejudice. As Count II is being dismissed with prejudice, the Court will decline to exercise supplemental jurisdiction over Plaintiffs' state law claim and will remand Count I of the FAC to state court. Therefore, to the extent Defendants seek dismissal of Count I pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, such motions are denied.

## VI. CONCLUSION

For the reasons stated, Defendants' Motions to Dismiss Plaintiffs' FAC are granted in part and denied in part. The Motions are granted to the extent that Plaintiffs' § 1983 claim alleging First Amendment retaliation at Count II is dismissed with prejudice pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. The Motions are denied to the extent that the Court declines to exercise supplemental jurisdiction over Plaintiffs' breach of contract claim at Count I, and the case will be remanded to the Court of Common Pleas of Allegheny County, Pennsylvania, for further proceedings.

An appropriate Order follows.

Dated: November 12, 2026

*s/ W. Scott Hardy*
W. Scott Hardy
United States District Judge

cc/ecf: All counsel of record